**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION**

Civil File No. 06-902 (JMR/AJB)

Taariq S. Irshaad,

   Plaintiff,

  v.

**Report and Recommendation**

Deputy Aaron Hess, and
Captain Stacy Sinner,

   Defendants.

   This matter is before the court for a report and recommendation on defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 [Docket No. 25]. The action has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Plaintiff filed a pro se complaint dated February 28, 2006 for violation of his civil rights pursuant to 42 U.S.C. § 1983. The complaint alleges violation of plaintiff's Eighth Amendment and Fourteenth Amendment rights with respect to the use of a stun belt during plaintiff's criminal trial and the use of tear gas by Deputy Aaron Hess while incarcerated at the Olmsted County Adult Detention Center ("Olmsted County ADC"). The complaint further alleges supervisory liability on the part of Captain Stacy Sinner regarding the use of tear gas by Deputy Hess.

   Defendants Deputy Hess and Captain Sinner move for summary judgment, asserting that the plaintiff's constitutional rights have not been violated by the use of the

stun belt or tear gas.[1]  Deputy Hess further asserts that as a government official, he is entitled to qualified immunity.  Captain Sinner contends that plaintiff has failed to state a claim against her upon which relief may be granted.  For the reasons discussed below the court **RECOMMENDS** that the defendants' motion for summary judgment on plaintiff's Eighth and Fourteenth Amendment claims be **GRANTED**, and that the **COMPLAINT** in this action be **DISMISSED WITH PREJUDICE**.

**DISCUSSION**

**Fact Allegations and Claims** [2]

Taariq S. Irshaad, the plaintiff in this matter, commenced this action alleging violations of his civil rights that occurred during his state criminal trial and incarceration as a pretrial detainee at the Olmsted County ADC.  Plaintiff is currently incarcerated as a state prisoner at MCF-Moose Lake.  Plaintiff was convicted and sentenced to a 44-month prison term for the fifth-degree assault and terroristic threatening of his former girlfriend.[3]  While in prison for this offense, plaintiff was charged and convicted of the first-degree assault of a fellow prison inmate.[4]  Plaintiff appealed his first-degree assault conviction to the Minnesota Court of Appeals where his conviction was affirmed.[5]  Plaintiff pursed further appeal with the Minnesota Supreme Court, where review was denied.[6]  In the present matter, plaintiff's constitutional claims are based upon events

---

[1] Olmsted County Jail & Courthouse and Olmstead County Judge (unnamed) were also named as defendants in the complaint.  The claims against these defendants were summarily dismissed by Order dated April 18, 2006.

[2] All facts below were taken from plaintiff's complaint, materials submitted by defendants and the Minnesota Court of Appeals opinion as cited. After the motion for summary judgment was filed, plaintiff was expressly made aware of his opportunity to submit a memorandum on the motion in an Order dated December 22, 2006.  Plaintiff did not file such a memorandum.

[3] *State v. Irshaad*, No. CX-95-1676, 1996 Minn. App. WL 175742, at *1 (Minn. App. Apr. 16, 1996).

[4] *State v. Irshaad*, No. C1-01-619, 2002 Minn. App. WL 378196, at *1 (Minn. App. Mar. 12, 2002).

[5] *Id*.

[6] *Irshaad v. State*, No. A05-548, 2006 Minn. Lexis 305, at *1 (Minn. May 16, 2006).

occurring during his criminal trial and pretrial detainment for the first-degree assault charge.

Defendants Deputy Aaron Hess and Captain Stacy Sinner are both employed at the Olmsted County ADC.  The complaint asserts that plaintiff's Eighth and Fourteenth Amendment rights were violated during his criminal trial when a stun belt was attached to the plaintiff as a restraining device.[7]  Plaintiff alleges that the use of the stun belt made him fear for his life, causing him to suffer severe mental and emotional distress.[8]  Furthermore, plaintiff alleges that the use of the stun belt was the result of racial discrimination.[9]  Plaintiff next alleges the violation of his Eighth and Fourteenth Amendment rights when Deputy Hess used tear gas against him while in the shower at Olmsted County ADC.[10]  Finally, plaintiff claims that Captain Sinner breached her duty by failing to supervise Deputy Hess and should also be held liable for the use of tear gas against plaintiff.[11]  Plaintiff contends that the use of tear gas was unreasonable and the result of racial discrimination.[12]

### Use of Stun Belt During State Criminal Trial

A stun belt was secured onto the plaintiff for use as a restraint during his state criminal trial.  The district court had found plaintiff to be a security risk because he had attempted to escape custody, had been charged with several administrative violations while in jail, and had several evaluations indicating "he had problems controlling his

---

[7] Complaint, 5 (Feb. 28, 2006).  A stun belt is a security device that administers an electric shock that temporarily disables a defendant whose actions create a security threat. *U.S. v. Durham*, 287 F.3d 1297, 1301 (11th Cir. 2002).
[8] Complaint, 5.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

behavior."[13] The district court determined that the security belt was necessary to maintain courtroom security.[14] Plaintiff makes no claim that the stun belt administered a shock during the course of his criminal trial.

### Use of Tear Gas While Detained at Olmsted County ADC

Deputy Hess maintains that the use of tear gas against plaintiff was necessary in order to provide for his personal safety.[15] On the evening of the incident plaintiff was in the shower when he was required to be in lock-down.[16] The plaintiff was behind a pulled curtain, rendering Deputy Hess unable to view the plaintiff or any other detainees who might be in the shower.[17] Deputy Hess requested that plaintiff exit the shower and cautioned that if plaintiff refused he would be forced to utilize Freeze Plus, a form of tear gas.[18] When plaintiff remained in the shower, Deputy Hess sprayed the tear gas onto the outside of the shower curtain, leading plaintiff to exit the shower in laughter.[19] Plaintiff later complained of watering eyes.[20]

As relief the plaintiff seeks compensatory damages of $50,000 from each defendant for the violation of his Eighth and Fourteenth Amendment rights. Plaintiff further seeks $50,000 from each defendant as punitive damages. Plaintiff sues defendants in their individual and official capacities.

---

[13] *Irshaad*, 2002 WL 378196, at *5.
[14] *Id.*
[15] Aff. Deputy Aaron Hess ¶ 3 (June 23, 1998).
[16] *Id.* at ¶ 2.
[17] *Id.*
[18] *Id.* The complaint alleges the use of mace or pepper spray. The record establishes the use of tear gas. Aff. Hess at ¶ 2. There is no issue of material fact in this regard.
[19] *Id.*
[20] *Id.*

**Standard of Review**

A motion for summary judgment is appropriate when the pleadings, answers to interrogatories, depositions, and admissions together with any available affidavits demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is genuine when the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party. *Ohio Cas. Ins. Co. v. Union Pacific R.R. Co.*, 469 F.3d 1158, 1162 (8th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The party moving for summary judgment bears the initial burden of demonstrating a lack of a genuine issue of material fact essential to the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party establishes a lack of a genuine issue of fact, the non-moving party then has the burden of coming forward with specific facts demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e). When the record "as a whole could not lead a rational trier of fact to find for the non-moving party," there is no genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The pleadings on pro se claims are to be construed liberally and are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, if the non-moving party does not come forward with evidence necessary to establish the essential elements of their claim, summary judgment must be granted, as this failure of proof "renders all other facts immaterial." *Celotex*, 447 U.S. at 323.

**Equal Protection**

Plaintiff alleges that the use of a stun belt during his state criminal trial and the employment of tear gas while incarcerated at Olmstead County ADC violated his right to Equal Protection afforded to him by the Fourteenth Amendment.  The Equal Protection Clause applies not only to discriminatory legislation, but also to discriminatory actions taken by government officials in the enforcement of the law.  *Britton v. Rogers*, 631 F.2d 572, 577 (8th Cir. 1980).  In order to establish a violation of Equal Protection, the plaintiff is required to establish "[p]roof of racially discriminatory intent or purpose." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). More specifically, the plaintiff must show that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

In this case, plaintiff alleges that the use of a stun belt during his state criminal trial and tear gas while incarcerated as a pretrial detainee was the result of racial discrimination.  However, plaintiff fails to allege any facts whatsoever that could establish that the use of the stun belt or tear gas was the result of a discriminatory purpose.  Therefore, plaintiff's Equal Protection claim should be dismissed.  *Britton*, 631 F.2d at 577.

**Eighth and Fourteenth Amendments**

Plaintiff alleges that the use of a stun belt during his state criminal trial and the employment of tear gas while incarcerated at Olmsted County ADC constituted cruel and unusual punishment in violation of his constitutional rights.  Such a claim is cognizable

6

for state pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.*

The Eighth Amendment prohibits the implementation of "cruel and unusual punishments." U.S. Const. Amend. XIII. This prohibition protects the individual from "excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005). Furthermore, the Eighth Amendment requires the government to "respect the dignity of all persons." *Id.* Such protection stems from the fundamental principal that "punishment . . . should be graduated and proportioned to [the] offense." *Weems v. U.S.*, 217 U.S. 349, 367 (1910). In applying Eighth Amendment protection, the court must consider the "evolving standards of decency" that demonstrate the progress of civilized society. *Trop v. Dulles*, 356 U.S. 86, 101 (1958).

### **Stun Belt**

Plaintiff contends that he was required to wear a stun belt during his state criminal trial in violation of the Eighth Amendment. The use of the stun belt during his criminal trial did not violate plaintiff's civil rights under the Constitution or other federal law. In order to establish a violation of civil rights pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate the violation of their "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (1996). The record in the present matter does not establish such a violation.

A district court has discretion to determine on a case-by-case basis whether the use of restraints is necessary for a particular defendant during his criminal trial. *U.S. v. Mahasin*, 442 F.3d 687, 691 (8th Cir. 2006) (quoting *Deck v. Mo.*, 544 U.S. 622, 629 (2005)). Maintaining

security in the courtroom has been described by this circuit as an "essential" state interest. *Gilmore v. Armontrout*, 861 F.2d 1061, 1071 (8th Cir. 1988). Furthermore, the Supreme Court has acknowledged the "need to restrain dangerous defendants to prevent courtroom attacks [and] the need to give trial courts latitude in making individualized security determinations." *Deck*, 544 U.S. at 632. Therefore, a district court's security determinations are reviewed for an abuse of discretion. *Hellum v. Warden, U.S. Pen. Leavenworth*, 28 F.3d 903, 907 (8th Cir. 1994).

In *U.S. v. Mahasin*, the Eighth Circuit held that the use of a stun belt, along with other forms of restraints, was appropriate when a defendant had been convicted of a violent crime, displayed violent behavior while detained, and had engaged in other behavior perceived as dangerous to others. 442 F.3d at 691. Furthermore, the Fifth Circuit has held specifically that the use of a stun belt is not an abuse of discretion when the defendant is a "flight risk." *Chavez v. Cockrell*, 310 F.3d 805, 807 (5th Cir. 2002). The Fifth Circuit has also held the use of a stun belt to be appropriate when there was no prejudice to the defendant, as the stun belt was neither activated nor visible to the jury. *U.S. v. Joseph*, 333 F.3d 587, 591 (5th Cir. 2003). Finally, the use of stun belts has been explicitly supported by several circuit courts. *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1242 (9th Cir. 2001); *U.S. v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000); *U.S. v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997).

The Eleventh Circuit however, has expressed concerns about the use of a stun belt as a restraint worn by defendants during their criminal trial. In *U.S. v. Durham*, the Eleventh Circuit held that the district court abused its discretion in allowing the use of a stun belt during the criminal trial of a defendant who had two escape attempts and was charged with armed robbery. 287 F.3d 1297, 1300-1301, 1308 (11th Cir. 2002). The circuit court held that the district court "did not make findings on the record sufficient to justify the use of this extraordinary security

measure." *Id.* at 1300. The circuit court expressed concerns that the use of a stun belt may impair a defendant's Sixth Amendment right to confer with counsel.[21] *Id.* at 1305-1306. The court stated that the risk and fear of a "painful and humiliating shock for any gesture that could be perceived as threatening likely chills a defendant's inclination to make any movements during trial-including those movements necessary for effective communication with counsel." *Id.* at 1305. The court further stated that the stun belt, if administered, would pose a threat to the "dignity of the courtroom," as the shock may cause the defendant "to lose control of his limbs, collapse to the floor, and defecate on himself." *Id.* at 1306. To respond to these concerns, the Eleventh Circuit held that a district court, in allowing the use of a stun belt, must make specific factual findings about the operation of the stun belt, the possibility of accidental discharge, the state interest being served by the use of the stun belt, and less restrictive methods of restraint. *Id.* at 1306-1307. Because the district court did not make any such findings on the record, and because the record on its face did not demonstrate a sufficient need for the use of a stun belt, the court held that the district court abused its discretion. *Id.* at 1308.

In the present matter, the Olmsted County District Court made specific findings on the record supporting the use of the stun belt during plaintiff's criminal trial. The district court determined that plaintiff was a security risk. *State v. Irshaad*. 2002 WL 378196, 5 (Minn. App. 2002). Specifically, the trial court found that plaintiff had been convicted of the crime of attempted escape from custody, had several administrative violations while incarcerated, and been determined by psychological examination to have difficulty controlling his behavior. *Id.* The trial court further determined that the stun belt was the least restrictive alternative because

---

[21] Although in the present matter the plaintiff is not asserting the violation of his Sixth Amendment rights, the Eleventh Circuit's analysis in *Durham* is relevant in describing the potential constitutional issues concerning the use of a stun belt generally.

9

while providing for the safety of the courtroom and its occupants, the stun belt would not be visible to the jury. *Id.*

Because the district court considered the use of the stun belt, making specific findings concerning its proper use, the court did not abuse its discretion is allowing the use of the stun belt. Furthermore, Eighth Circuit precedent in *U.S. v. Mahasin* supports the use of the stun belt in this case. Therefore, the civil rights of the plaintiff were not violated by the use of a stun belt in his criminal trial and constitutional claims relating to its use should be dismissed.

**Tear Gas**

Plaintiff contends that Freeze Plus tear gas was used against him while detained at Olmstead County ADC in violation of his civil rights. Plaintiff asserts that the use of tear gas violated the Eighth Amendment protection afforded to him as a state pretrial detainee by the Due Process Clause of the Fourteenth Amendment.

The Supreme Court has held that "the treatment a prisoner receives in prison . . . [is] subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). A prison official may not use excessive force against prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the Eighth Circuit has held that "[o]nly the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The fundamental Eighth Amendment inquiry is "whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 1-2 (1992) (citing *Whitley,* 475 U.S. at 320-321)). The factors to be analyzed under this good faith test are: (1) whether there was an objective need for

force; (2) the discrepancy between the need and the amount of force used; (3) the threat perceived by the prison official; (4) the effort used by the official to temper the effects of the force; and (5) the extent of the injury to the inmate. *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

The Eighth Circuit in *Jones v. Shields* adopted the position of several circuits, stating that "a limited application of capstun[22] to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." 207 F.3d at 496. (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)). The application of tear gas would be a similar "tempered response" because tear gas, like capstun, is a chemical agent causing a temporary unpleasant response that is employed to restrain an inmate. *Id.* at 493-494. The court in *Jones* held that when chemical agents such as capstun are used to restrain recalcitrant inmates, it is seldom an appropriate basis for judicial oversight. *Id.* at 496 (quoting *Colon v. Schneider*, 899 F.2d 660, 669 (7th Cir. 1990)). Furthermore, the court found that when the inmate refused to follow the direct order of the prison official, the use of a chemical agent to restrain the inmate was not malicious or sadistic. *Id.* at 497.

Similar to the facts of *Jones v. Shields,* the plaintiff in this case refused to follow the direct order of Deputy Hess to exit the shower. After a warning was given, Freeze Plus tear gas was sprayed onto the shower curtain, leading the plaintiff to exit the shower. The only evidence of injury to the plaintiff resulting from this action was a complaint of watering eyes. Such a use of tear gas was a "tempered response" to a threat to the safety and security of Olmstead County ADC and Deputy Hess, and was a "good faith effort to

---

[22] Capstun is a brand name for law enforcement-grade pepper spray. CAP-STUN Home Page, http://www.zarc.com/english/cap-stun/index.html (last visited March 29, 2007).

11

maintain or restore discipline." Furthermore, there is no evidence on the record of malicious or sadistic conduct on the part of Deputy Hess. The use of tear gas in this case did not violate plaintiff's civil rights and the claim should be dismissed.

**Qualified Immunity**

Deputy Hess, as a government official, claims the protection of qualified immunity. Under the doctrine of qualified immunity, a government official will not be held civilly liable for constitutionally impermissible conduct if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *McCaslin v. Wilkins*, 183 F.3d 775, 778 (8th Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335 (1986).

The doctrine of qualified immunity is not a defense to liability, but instead grants a government official immunity from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). When a constitutional violation is not clearly established in the specific context of the case, qualified immunity allows government officials to "avoid the burden of trial." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Furthermore, qualified immunity prevents "the general costs of subjecting officials to the risks of trial-distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow*, 457 U.S. at 816.

The first inquiry in a qualified immunity claim must always be whether the alleged facts indicate a constitutional violation. *Saucier*, 533 U.S. at 201. If no constitutional violation is established by plaintiff's allegations, the qualified immunity analysis need go no further. *Id.* In

this case, as previously discussed above, the use of Freeze Plus tear gas by Deputy Hess did not violate plaintiff's Eighth Amendment or Equal Protection rights under the U.S. Constitution. Therefore, the qualified immunity analysis need go no further, as Deputy Hess cannot be held civilly liable under 42 U.S.C. § 1983.

**Failure to State A Claim Upon Which Relief May be Granted**

Plaintiff alleges that defendant Captain Stacy Sinner is liable under 42 U.S.C. § 1983 for her failure to supervise Deputy Hess in his use of Freeze Plus tear gas. The potential for supervisory liability under § 1983 is limited. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). A supervisor is not liable for the unconstitutional actions of subordinates. *Id.* Instead, a supervisor is liable only when they are "personally involved" with an unconstitutional act or when the facts demonstrate a "deliberate indifference toward the violation." *Id.* (citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)). The supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). A supervising officer can also be held liable under § 1983 when they fail to properly train a subordinate who commits a constitutional violation. *Askew v. Millerd*, 191 F.3d 953, 958-959 (8th Cir. 1999).

In this case, because no constitutional violation has been established, Captain Sinner cannot be held liable under § 1983. However, even if a constitutional violation had occurred as a result of the use of Freeze Plus tear gas, Captain Sinner would not be liable because the record supplies no facts alleging Captain Sinner's personal involvement in, or knowledge of, the use of Freeze Plus tear gas at the time it was employed. Furthermore, the record does not establish Captain Sinner's deliberate indifference to the use of tear gas, nor does it establish her purposeful

"blind eye" to the use of tear gas. Finally, the record alleges no facts demonstrating Captain Sinner's failure to properly train Deputy Hess. Therefore, the plaintiff has failed to state a claim against Captain Sinner upon which relief may be granted.

## RECOMMENDATION

Based upon the foregoing discussion and conclusions, the Magistrate Judge **RECOMMENDS** that the plaintiff's motion for summary judgment [Docket No. 25] be **GRANTED** and that the **COMPLAINT** pursuant to 42 U.S.C. § 1983 [Docket No. 1] be **DISMISSED WITH PREJUDICE**.

Dated:     April 5, 2007

                                                              s/Arthur J. Boylan
                                                              Arthur J. Boylan
                                                              United States Magistrate Judge

      Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before April 24, 2007.